

EOD
03/16/2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL G. APREA, | § | Case No. 06-40493 |
| | § | (Chapter 13) |
| Debtor. | § | |

## MEMORANDUM OPINION[1]

On July 26, 2006, the Court conducted a hearing to consider confirmation of the Amended Chapter 13 Plan (the "Amended Plan") proposed by the debtor, Michael Guy Aprea, in this case. Objections to confirmation of the Plan were filed by MBNA America Bank, N.A. ("MBNA"), an unsecured creditor, and by Janna Countryman, the Chapter 13 trustee. For the reasons that follow, the Court has concluded that the objections should be sustained and that confirmation of the Amended Plan should be denied.

### I. BACKGROUND FACTS

The debtor filed a voluntary Chapter 13 petition on April 16, 2006. Because the debtor filed his petition after October 17, 2005, his case is subject to the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. S 256, 109-8, 119 Stat. 23 (2005) ("BAPCPA").

The debtor was single with no children and no child support payments when he filed for bankruptcy protection. The debtor has been employed by Systemware, Inc.

---

[1] This Memorandum Opinion is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, or the law of the case, or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

for more than nine years, and he earns approximately $75,000 per year. According to his current Schedule I, he anticipates receiving $5,925 in gross monthly income from wages (or $71,100 in gross annual income).

Although the debtor was not married at the time of the hearing on confirmation of the Amended Plan, his fiancée lived with him, and he was paying for her living expenses. The debtor began accumulating unsecured debt in 2005 when he used his credit to pay for his girlfriend (who had become his fiancée by the time of the confirmation hearing) to move to the Dallas area. From that time through the petition date, the debtor used his unsecured credit to pay for living expenses and various bills, including his fiancée's medical bills.[2] The debtor's unsecured debt grew from $2,500 as of January 2005 to $67,958.08 as of his bankruptcy filing on April 16, 2006. The debtor also used approximately $25,000 from an investment fund to pay for expenses during this period.

The debtor's statements to this Court regarding his fiancée's monetary contributions to his household have been inconsistent. In his original Schedule I, the debtor listed $562 in anticipated monthly income from his fiancée; in contrast, line 7 of debtor's Form B22C stated that his fiancée had contributed $374.22 a month for household expenses during the six months prior to bankruptcy. On June 16, 2006, the debtor amended his Schedule I as well as his Form B22C. The debtor's amended Schedule I listed $281 in anticipated monthly income from his fiancée; in contrast,

---

[2] The debtor's fiancé has no medical insurance, and the debtor estimated that he spent approximately $25,000 for his fiancé's medical care prior to bankruptcy.

2

line 7 of his amended Form B22C showed that her monthly contribution was $362.08 in the six months prior to bankruptcy. The debtor's current Form B22C, which was filed after the confirmation hearing, shows no regular contributions from the debtor's fiancée for the debtor's household expenses in the six months prior to bankruptcy.

The debtor drives a 1996 Acura TL 3.2 against which there is no debt. In February or March 2005, the debtor purchased a new Acura for his girlfriend to drive. In October 2005, the debtor traded in the car and co-signed a 42-month lease for a 2006 Acura MDX. The lease payment is $565 a month. The debtor testified that his fiancée has bad credit and was unable to purchase or lease a car on her own.

The debtor lists four secured creditors in his Schedule D. The debtor's obligations to two of these creditors – Coldwell Banker (in the amount of $126,814.60) and Viewpoint Bank (in the amount of $18,173.72) – are secured by his home. The debtor also lists Honda Financial Services as a secured creditor in his Schedule D. Finally, the debtor's Schedule D includes a secured debt to Sony Financial Services in the amount of $2,419.44 relating to a 50" Sony television and sound system. The debtor testified at the confirmation hearing that he purchased the television and sound system on credit in 2004.

The debtor testified that his fiancée has several medical conditions (including irritable bowel syndrome, acid reflux disorder and insomnia) that have prevented her from holding a steady job since moving to the Dallas area. The debtor's fiancée was unemployed at the time of the confirmation hearing. The debtor nonetheless testified that his fiancée has made some of the lease payments for the 2006 Acura MDX. The

3

debtor's testimony that his fiancée has and will continue to pay at least a portion of the monthly lease payments was not credible and, moreover, conflicts with his testimony regarding her inability to hold a full time job. The debtor's statements regarding lease payments made or to be made by his fiancée's payment also is not supported by the amended Form B22C filed by the debtor after the confirmation hearing.

The debtor filed a Chapter 13 plan on the same day he filed his bankruptcy petition. The debtor's original plan proposed that the debtor would make a single payment of $350 to the Chapter 13 trustee. Of that amount, $315 was to be distributed to his unsecured creditors on a pro rata basis. In exchange, the debtor sought a discharge of his unsecured debts, which he estimated to be in excess of $63,556.18.

A meeting of creditors was held on June 9, 2006 pursuant to 11 U.S.C. §341. At that meeting, the Chapter 13 trustee stated that she would oppose confirmation of the debtor's proposed one-month plan. The debtor subsequently filed the Amended Plan in which he proposes to pay his unsecured creditors a pro rata share of $5.83 a month for five years.

In addition to amending his proposed plan, the debtor made significant changes to his claimed income and expenses following the meeting of creditors. The debtor's original Schedules I and J showed monthly net income of $106. In contrast, the amended Schedules I and J filed by the debtor on June 16, 2006, show monthly net income of ($283.52).

4

The debtor's amended Schedule I makes the following changes to the debtor's gross and net income: (1) the debtor's gross monthly income is increased from $5,800 to $5,925; (2) the debtor's monthly payroll taxes are decreased from $892.84 to $615.20; and the debtor's anticipated income from his "girlfriend's payment for car" is reduced from $562 (*i.e.*, the full amount of the monthly lease payment) to $281. The debtor's amended Schedule J makes the following increases to the debtor's claimed expenses: (1) the debtor's expenses for home maintenance are increased from $30 to $175; (2) his expenses for laundry and dry cleaning are increased from $10 to $70; (3) his medical and dental expenses are increased from $5 to $128; and (4) his recreational expenses are increased from $220 to $329.50. The debtor's amended Schedule J also includes a monthly installment payment of $66.56 to Sony.

The debtor's Schedule I and J, as amended, reflect that the debtor lives a relatively affluent lifestyle. The debtor spends more than $700 a month on food and recreation. The debtor makes monthly, voluntarily contributions of $899 into his 401(k) account. The debtor enjoys a 50" television set, and he proposes to continue making direct payments to Sony for the television set in his Amended Plan.

Like his Schedules I and J, the debtor has made significant changes to his Form B22C during the course of his bankruptcy case. The debtor's original Form B22C showed a monthly disposable income of ($343.06). This calculation included secured debt payments for his house, the lease payments for his fiancée's car, and payments for his 50" Sony television. The amended Form B22C filed by the debtor on June 16, 2006, increased the debtor's reported pre-petition income as well as certain pre-

5

petition expenses. Line 58 of his amended form B22C showed monthly disposable income of $213.59.

Following the confirmation hearing, the debtor once again amended his Form B22C. The debtor's current Form B22C, which does not include any income from his fiancée, reflects monthly disposable income of ($282.37) for the six months prior to bankruptcy.[3] The debtor's current Form B22C shows that the debt to Sony is unsecured (by removing the payment to Sony from the debtor's deductions for secured debt payment) and includes a new operational allowance of $200 for the debtor's 1996 Acura.

Prior to filing for bankruptcy or speaking with a bankruptcy attorney, the debtor consulted with a credit counseling agency. The debtor subsequently retained bankruptcy counsel, and he paid his counsel $1,800 prior to filing a bankruptcy petition. At the confirmation hearing, the debtor testified that, when he filed his petition under Chapter 13 of the Bankruptcy Code, he knew that he could not receive a discharge in Chapter 7 because his monthly income is such that he falls within the "presumption of abuse" established by 11 U.S.C. §707(b).

---

[3] The debtor seeks to further reduce his "disposable income" in Part VI of the Form B22C. Part VI allows a debtor to list any monthly expense not otherwise included in the form that is required for the health and welfare of the debtor. In this case, on line 59(a) of Form B22C, the debtor lists a monthly "expense" of $306.08, which he describes as a "reduction in income to match Schedule I." In his post-hearing brief, the debtor explains that this amount includes a $225 reduction in the debtor's anticipated, post-bankruptcy gross income from employment as well as an anticipated, post-bankruptcy reduction of $81.08 in the amount the debtor expects to receive from his fiancée each month. The debtor, however, misstates the contents of his current Form B22C with respect to his fiancée's monthly contributions. Although line 7 of his prior Form B22C reported $362.08 in pre-petition income from the debtor's fiancée, the debtor's current Form B22C lists no pre-petition income from the debtor's fiancée. If the debtor had included $362.08 in monthly pre-petition income from his fiancée in his current Form B22C, the debtor would have reported pre-petition disposable income of $79.71.

6

## II. ANALYSIS

The Chapter 13 trustee and MBNA have objected to confirmation of the Amended Plan.  In her post-hearing brief, the Chapter 13 trustee raises three objections: (1) the Amended Plan does not provide that all of the debtor's projected disposable income will be used to make payments to unsecured creditors as required by §1325(b)(1)(B); (2) the debtor did not file his bankruptcy petition in good faith as required by §1325(a)(7); and (3) the debtor has not proposed the Amended Plan in good faith as required by §1325(a)(3).  MBNA likewise objects that the Amended Plan fails to satisfy §1325(a)(3) and (7) of the Bankruptcy Code.[4]

### A.  The Debtor Is Not Contributing All of His Disposable Income

Among other things, BAPCPA amended §1325(b) of the Bankruptcy Code. This provision now requires that "the court may not approve the plan unless … the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period … will be applied to make payments to unsecured creditors under the plan."  11 U.S.C. §1325(b)(1)(B).  In this case, the trustee argues that the debtor is not proposing to contribute all of his projected disposable income to

---

[4] MBNA also argues that, because the debtor has already paid the Chapter 13 trustee the full amount that he proposes to distribute to unsecured creditors, the Amended Plan fails to persist for the requisite five year repayment period set forth in §1325(b)(4).  The debtor's Amended Plan, however, proposes a five-year repayment period. It also is noteworthy that BAPCPA has imposed new post-confirmation reporting requirements upon debtors.  Section 521(a)(1)(B)(vi) requires a debtor to submit a statement disclosing any reasonably anticipated increase in income or expenditures over the 12 month period following the date of the petition. Additionally, at the request of the Court, United States Trustee, or any party in interest, individual debtors must file with the Court statements of income and expenditures annually after the plan is confirmed and until the case is closed, as well as their annual income tax returns while their case is pending. *See* 11 U.S.C. §521(f).  If a debtor who originally proposed to make no or minimal payments to unsecured creditors experiences an improvement in his financial condition, the debtor, the debtor's creditors or the Chapter 13 trustee may move to modify his confirmed plan.  *See* 11 U.S.C. §1329.

the Amended Plan because his gross income is higher than he has reported on his Form B22C and because certain expenses claimed by the debtor on the Form B22C should be disallowed.

The amended §1325(b) contains new definitions of the income and expenses to be used for determining a debtor's "disposable income." If, as in the present case, the debtor has current monthly income that, when annualized, is greater than the applicable median family income, the debtor is subject to §1325(b)(3). Section 1325(b)(3) provides (in pertinent part) that "[a]mounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." Section 707(b)(2)(A)(ii)(I) permits debtors to claim certain standard allowances in accordance with the Local Standards adopted by the Internal Revenue Service.

In his post-hearing brief, the debtor argues that he has no disposable income to contribute to his creditors. This argument is based on his latest Form B22C, which shows a monthly disposable income of ($282.37) on line 58. Similarly, the debtor's current Schedules I and J show a monthly net income of ($283.52).

As an initial matter, it is not clear from the record why the debtor anticipates that his monthly gross income from his employment will decrease $225 -- from $6,150 (as described in his current Form B22C for the period prior to bankruptcy) to $5,925 (as described in his current Schedule I). The Debtor has not explained the inconsistencies among his sworn statements regarding his pre-bankruptcy income and his anticipated future income. The Court further finds the debtor's statements and

8

testimony regarding his pre- and post-bankruptcy income to be unreliable and to lack credibility. For the sake of argument, however, the Court will accept the debtor's current Form B22C and Schedules I and J as true and accurate descriptions of his income and expenses for the relevant time periods.

Both the debtor's current Form B22C and his current Schedule I include expenses relating to his fiancée's car. In his Form B22C, the debtor claims operating expenses of $430 for two cars; the operating expense for one car is $348 under the IRS Local Standards. The debtor also claims monthly ownership costs of $471, which is the maximum permissible amount under the IRS Local Standards, relating to his fiancée's car. Thus, the debtor claims the total amount of $543 in expenses relating to his fiancée's car in his Form B22C.

The IRS Local Standards only permit transportation expenses to the extent they are necessary. *See In re Barraza*, 364 B.R. 724, 727-728 (Bankr. N.D. Tex. 2006) (discussing the IRS Local Standards). The IRS introduces its collection standards by stating that --

> The transportation standards consist of nationwide figures for monthly loan or lease payments referred to as ownership costs, and additional amounts for monthly operating costs …. The ownership costs provide maximum allowances for the lease or purchase of up to two automobiles *if allowed as a necessary expense*.

IRS Collection Financial Standards, available at http://www.irs.gov/individuals (emphasis added). A "necessary expense" is an expense that is "necessary to provide for a taxpayer's and his or her family's health and/or production of income." Internal Revenue Manual §5.15.1.7, available at http://www.irs.gov/irm. Additionally, the

9

Internal Revenue Code defines a dependent as either a "qualifying child" or a "qualifying relative." *See* 26 U.S.C. §152.

In this case, the debtor owns and primarily drives a 1996 Acura. Any cost incurred by the debtor's fiancée in connection with the operation of another vehicle is not an expense of the debtor or a legal dependent of the debtor. *See* 11 U.S.C. §1325(b)(2)(A).[5] Further, the debtor's voluntary payments of his unemployed fiancée's transportation expenses do not generate any household income. The Court therefore concludes that the expenses relating to the 2006 Acura are unnecessary and unreasonable. When the unnecessary car ownership and operating expenses are removed from the debtor's calculations, the debtor had at least $260 in monthly disposable income during the six months prior to filing for bankruptcy according to his current Form B22C.

The result is similar when the Court refers to the debtor's current Schedules I to determine the amount of "disposable income" that must be paid to unsecured creditors. The debtor's current Schedule I shows an anticipated monthly gross income of $5,925 (excluding the anticipated monthly payment of $281 from the debtor's unemployed fiancée). When this amount is reduced by the debtor's 401k contribution ($899) and the undisputed expenses listed in his current Form B22C

---

[5] While income that is reasonably necessary to support dependents is excluded from the disposable income calculation, amounts voluntarily paid to non-dependent family members are included in the disposable income calculation. *See, e.g., In re Richmond*, 144 B.R. 539, 542 (Bankr. W.D. Okla. 1992). Although one may feel morally compelled to provide support for non-dependent family members, friends, or romantic interests, it is not a legal obligation, while there is a legal obligation to creditors. *See In re Mastromarino*, 197 B.R. 171, 178 (Bankr. Me. 1996). A debtor cannot "unilaterally ... subordinate his creditors" to those he chooses to subsidize. *Id. See also, e.g., In re Harden*, 351 B.R. 643 (Bankr. C.D. Ill. 2006).

($4,990.37), the debtor has $35.63 in monthly disposable income that could be paid to his unsecured creditors.

For all the foregoing reasons, the Court concludes that the debtor has failed to satisfy the requirements of §1325 of the Bankruptcy Code. In particular, the debtor's Amended Plan does not provide that all of the debtor's projected disposable income will be used to make payments to unsecured creditors as required by §1325(b)(1)(B). The Court, therefore, concludes that the Amended Plan should not be confirmed.

### B. The Debtor's Amended Plan Discriminates Unfairly

Alternatively, the Court addresses the debtor's assertion in his post-hearing brief that Sony is actually an unsecured creditor. If Sony is, in fact, an unsecured creditor, then the debtor must establish that his separate treatment of Sony in the Amended Plan does not discriminate unfairly against his other unsecured creditors. Section 1322(b)(1) provides that a reorganization plan may "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims."

In this case, the debtor's Amended Plan proposes to make direct payments to Sony relating to the "apparently unsecured" debt for his 50" television. *See* Debtor's Memorandum of Law In Support of Confirmation of Chapter 13 Plan, p. 6. In contrast, the Amended Plan proposes only a .005% distribution to the debtor's other unsecured creditors, who hold claims against the debtor in the total amount of

11

$67,958.08. The debtor has failed to articulate any reason for his special classification of Sony, other than that he only recently discovered that Sony filed an unsecured claim against his bankruptcy estate. Under the circumstances, the Court finds that the special treatment provided for Sony unfairly discriminates against the debtor's other unsecured creditors. The Court, therefore, concludes that the debtor has failed to satisfy all of the requirements of §1325 of the Bankruptcy Code and that the Amended Plan should not be confirmed.

### C. The Debtor Has Not Acted in Good Faith

At the confirmation hearing and in their post-hearing briefs, the parties focused on whether the debtor has acted in "good faith." The debtor argues in his post-hearing brief that the amendments made to §1325(b) of the Bankruptcy Code by Congress in 1984 and 2005 prevent this Court from considering a debtor's income, expenses and proposed repayment to creditors when determining the debtor's good faith under §1325(a)(3). With respect to the debtor's filing of his petition and the Amended Plan, the debtor asserts that he acted in good faith and, since the trustee presented no evidence to the contrary, the Court must accept his self-serving testimony as true.

#### 1. *"Good faith" is not a new requirement*

The concept of "good faith" is not new to bankruptcy courts. Since its enactment, §1325 of the Bankruptcy Code has required that a bankruptcy plan must be filed in good faith in order to be confirmed. *See* 11 U.S.C. §1325(a)(3). The Fifth Circuit long-ago adopted a "totality of the circumstances" test for deciding whether a

Chapter 13 plan has been filed in good faith and may be confirmed. *See, e.g., Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983); *In re Chaffin*, 836 F.2d 215, 217 (5th Cir. 1988).

Prior to the enactment of BAPCPA, the Bankruptcy Code did not expressly require that a debtor must file the bankruptcy petition in good faith. Many courts nonetheless considered a debtor's good faith in filing the bankruptcy petition when deciding whether to dismiss the bankruptcy case, reasoning that "[a]lthough it is not specified in the Code, good faith is an implicit jurisdictional requirement for granting relief under Title 11 and that lack of good faith is a basis for dismissal." *In re Dickerson*, 232 B.R. 894 (Bankr. E.D. Tex. 1999). These courts generally applied a "totality of the circumstances" test when determining whether to dismiss a bankruptcy petition for lack of good faith pursuant to §1307(c). *See, e.g., In re Love*, 957 F.2d 1350 (7th Cir. 1992); *In re Fonke*, 310 B.R. 809 (Bankr. S.D. Tex. 2004). Congress codified this line of cases in the BAPCPA by expressly requiring that, in order to confirm a Chapter 13 plan, the action of the debtor in filing the petition must have been in good faith. *See* 11 U.S.C. §1325(a)(7).

### 2. *Factors to consider when determining "good faith"*

The bankruptcy petitions in *Chaffin* and *Public Finance* were filed prior to amendments to the Bankruptcy Code in 1984. At the time the petitions in *Chaffin* and *Public Finance* were filed, §1325(a)(4) required "the amount to be paid on each secured claim to be 'not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7' …." *Chaffin*, 816 F.2d at 1073

13

(quoting 11 U.S.C. §1325(a)(4)). In *Public Finance*, the Fifth Circuit rejected the argument that the "good faith" standard set forth in §1325(a)(3) required the debtor to pay more than the statutory minimum set forth in §1325(a)(4). *Public Finance*, 712 F.2d at 221.

In *Chaffin* and *Public Finance*, the Fifth Circuit instructed that, when viewing the totality of the circumstances, courts must be "mindful of the purpose of the Bankruptcy Code …." *Public Finance Corp.*, 712 F.2d at 221. Courts must assess whether the debtor's reorganization plan constitutes a "reasonable repayment effort" or "an attempt to abuse the spirit of the Bankruptcy Code." *Id.* With respect to the factors courts should consider, the Fifth Circuit remanded the case in *Chaffin* and expressly directed the trial court to look at "whether the payments under the plan fairly reflected [the debtor's] ability to pay, considering both his current and projected future income." *Chaffin*, 836 F.2d at 216. The Fifth Circuit also directed the trial court to consider whether the bankruptcy petition was filed as part of a fraudulent scheme and whether the proposed plan was opposed by creditors. *Id.*

The 1984 amendments to the Bankruptcy Code added a "disposable income" test for confirmation of a Chapter 13 plan. Some courts interpreted this amendment to the Bankruptcy Code as eliminating any consideration of the debtor's income and expenses from a "good faith"/"totality of the circumstances" analysis, reasoning that consideration of a debtor's income and expenses were "subsumed" by the new disposable income test. *See, e.g., In re Barr*, 341 B.R. 181, 184 (Bankr. M.D. N.C. 2006) (collecting cases). The Fifth Circuit, however, did not make any such

14

pronouncement following the 1984 amendments and, in fact, continued to cite its remand opinion in the *Chaffin* case as setting the standard for the "good faith" analysis. *See, e.g., In re Ramirez*, 204 F.3d 595, 601 (5th Cir. 2000) (concurring opinion). Courts within the Fifth Circuit have continued to rely on the factors set forth in *Chaffin,* including factors relating to a debtor's income and expenses, when deciding whether to confirm a plan or dismiss a bankruptcy case. *See, e.g., In re Armstrong*, 320 B.R. 97, 107 (Bankr. N.D. Tex. 2005).

### *3. The debtor did not file his bankruptcy petition in good faith*

With respect to the filing of a bankruptcy petition, BAPCPA made two relevant amendments to the Bankruptcy Code. First, BAPCPA created a new "presumption of abuse" so that debtors such as Mr. Aprea could not get a discharge in Chapter 7. *See* 11 U.S.C. §707(b). Second, BAPCPA codified the pre-BAPCPA requirement that a bankruptcy petition must be filed in good faith. *See* 11 U.S.C. §1325(a)(7). Where, as here, a debtor who is ineligible for Chapter 7 proposes to make no significant repayment to his creditors in his Chapter 13 plan, the Court finds that the petition was not filed in good faith. It appears from the record, and the Court so finds, that Mr. Aprea filed his Chapter 13 petition merely to circumvent the "presumption of abuse" in §707(b).

The debtor bears the burden of establishing good faith in connection with the confirmation of his plan. *See In re Dickerson*, 232 B.R. 894, 897 (Bankr. E.D. Tex. 1999) ("The burden of establishing good faith is on the debtor in confirmation proceedings …."). In this case, however, the evidence shows that the debtor never

15

had any intention of repaying his unsecured creditors and that he filed his Chapter 13 bankruptcy petition in bad faith.  Cf: *Pioneer Bank of Longmont v. Rasmussen*, 888 F.2d 703, 705 (10th Cir. 1989) ("Although the discharge of an obligation which would be nondischargeable in Chapter 7 is not, standing alone, a sufficient basis on which to find bad faith or deny confirmation, it is a relevant factor to be considered in the §1325(a)(3) good faith inquiry. Resort to the more liberal discharge provisions of Chapter 13, though lawful in itself, may well signal an 'abuse of the provisions, purpose, or spirit' of the Act ….") (quoting *In re Neufeld,* 794 F.2d 149, 152-153 (4th Cir.1986)).  In the words of the Fifth Circuit, Mr. Aprea's repayment plan is not "reasonable repayment effort" but is, instead, "an attempt to abuse the spirit of the Bankruptcy Code."  *Public Finance Corp.*, 712 F.2d at 221.  The Court, therefore, concludes that the debtor has not satisfied all of the requirements of §1325 of the Bankruptcy Code and that the Amended Plan may not be confirmed.

### *4. The debtor did not propose his Chapter 13 plan in good faith*

A determination of "good faith" under §1325(a)(3) "requires a careful examination of the totality of the circumstances surrounding the debtor's Chapter 13 filing." *Chaffin*, 836 F.2d at 217.  An examination necessarily involves consideration of the weight and creditability of the testimony presented as well as an evaluation of the totality of the circumstances.  In addition to reviewing a debtor's income, expenses and proposed repayment plan, Courts within the Fifth Circuit have relied upon and often recited the following additional factors when determining whether a Chapter 13 plan was filed in "good faith" --

16

- the nature of the debt
- whether the debt would be nondischargeable in Chapter 7
- the timing of the bankruptcy petition
- the debtors' motive in filing the petition
- how the debtors' actions affected creditors
- the debtors' treatment of creditors before and after the petition
- whether the debtor has been forthcoming with creditors and court

*See, e.g.*, *In re Stathatos*, 163 B.R. 83 (N.D. Tex., 1993); *In re Russell*, 348 B.R. 441, 448 (Bankr. S.D. Tex., 2006).

In this case, the debtor used unsecured credit to finance his living expenses prior to bankruptcy and now seeks to discharge those debts. The debtor provides complete or nearly complete financial support for his fiancée, and his amended Schedule J shows that he anticipates spending more than $700 a month on food and recreation. The debtor leases a new, luxury vehicle for his unemployed fiancée to drive. He plans to continue paying his fiancée's expenses and contributing 15% of his monthly salary to his 401k. The debtor also proposes to continue making direct payments to Sony for his 50" television set and surround sound system.

As previously discussed, the debtor has not been forthcoming with the Court or the Chapter 13 trustee regarding his income and expenses. The debtor's statements regarding his fiancée's contributions to his household income have been inconsistent, and the Court did not find his testimony at the confirmation hearing to be credible on this issue. The Court also finds that the debtor's amended Schedule J is unreliable as proof of his current monthly expenses. The amended Schedule J, which was filed only two months after his original Schedule J, contains significant increases in his

expenses from the original Schedule J. The debtor offered no explanation for his original omissions, and it appears to the Court that the debtor has attempted to manipulate his bankruptcy schedules and his Form B22C in order to create the illusion that he is unable to make any significant repayment to his creditors.

As the Fifth Circuit has explained in connection with a predecessor to the current "disposable income" test, the "good faith" requirement cannot be read to require a debtor to pay more than required under §1325(b)(2). *In re Freeman*, 712 F.2d at 221. However, this is not a case where the only problem is that the debtor is proposing to make no significant payment to his unsecured creditors. *Compare In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006) (trustee contended that the debtor failed to comply with §1325(a)(3) based on a single factor – the amount of the proposed plan payment). This case involves an affluent debtor who has every apparent intention of continuing to live an affluent lifestyle. The Court also notes the contrast between what the debtor paid his bankruptcy attorney prior to filing for bankruptcy – $1800 – and what he proposes to pay his unsecured creditors over five years – $315. In this case, the Court finds, based on the totality of the circumstances, that the debtor did not propose his bankruptcy plan in good faith.

### III. CONCLUSION

For the reasons stated herein, the Court finds that objections by the Chapter 13 trustee and MBNA pursuant to 11 U.S.C. §1325(a)(3), (a)(7) and (b)(1)(B) should be sustained. A separate order so providing will be entered. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To

the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings as necessary or as requested by any party.

Signed on 3/16/2007

*Brenda T. Rhoades*    SD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE